J-S39014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1976 EDA 2025 |

Appeal from the Order Entered June 25, 2025
In the Court of Common Pleas of Wayne County
Civil Division at No: CP-64-DP-0000004-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: K.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1977 EDA 2025 |

Appeal from the Decree Entered June 25, 2025
In the Court of Common Pleas of Wayne County
Civil Division at No: 2025-00012

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:　　　　　　　　**FILED MARCH 13, 2026**

R.B. (Father) appeals from the June 25, 2025, decree involuntarily terminating his parental rights to his biological son, K.B., born April 2018 ("Child").  Father also appeals from the order entered the same day, changing K.B.'s permanency goal to adoption.  Upon review, we affirm the termination decree and dismiss Father's appeal from the goal change order as moot.

We glean the factual and procedural history of the above-captioned matters from the certified record. Wayne County Children and Youth Services ("CYS") has history with this family dating back to 2017. On December 14, 2023, a warrant was executed on T.D. (Mother) and Father's home based on suspected drug trafficking. *See* Petition for Dependency, 3/8/24. Father was arrested and charged with possession with intent to deliver. *Id.* Mother admitted to using drugs and tested positive for methamphetamines, fentanyl, and THC. *Id.* An in-home safety plan was established by CYS and removed shortly thereafter because Mother started to cooperate with CYS and had a negative drug screen. *Id.* Father was then released from jail. *Id.*

Approximately one month later, Mother and Father were charged with harboring a fugitive and possession of drug paraphernalia. *Id.* Father was again arrested.[1] *Id.* At that time, a second in-home safety plan was established by CYS. *Id.* On February 21, 2024, CYS determined that the in-home safety plan was no longer feasible as Mother tested positive for methamphetamines and amphetamines. *Id.* As a result, Mother signed a 30-day voluntary placement agreement. *Id.* On March 8, 2024, CYS filed a petition for dependency noting that Father was incarcerated and that it was not safe for K.B. to return to Mother's care as CYS had concerns with Mother's lack of cooperation, substance abuse, mental health, parenting skills, and

---

[1] Father pleaded guilty to harboring a fugitive and possession with intent to deliver and was sentenced on May 9, 2024, to an aggregate 12 to 36 months imprisonment and 18 months concurrent probation. *See* CP-64-CR-33-2024 and CP-64-CR-387-2023.

housing stability. *Id.* On March 12, 2024, CYS was awarded protective custody of K.B., and, at a shelter care hearing, the court determined K.B. should remain in the care and custody of the agency.

K.B. was adjudicated dependent on March 26, 2024, and placed in foster care, where he remained during the pendency of these proceedings. On May 16, 2025, CYS filed a petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a) and (b).[2] The court held a termination hearing on June 17, 2025, wherein CYS presented the testimony of CYS caseworker Michael Murolo.

At the conclusion of the hearing, the court took the matter under advisement and ultimately entered a decree involuntarily terminating Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8), and (b). This timely appeal followed.[3] Both Father and the court have complied with Pa.R.A.P. 1925. Father raises the following issues for our review, renumbered for ease of disposition:

1. Whether the trial court abused its discretion and committed an error of law when it found that sufficient grounds existed for [the] termination of [Father's] parental rights in this child, and when the trial court failed to primarily consider the child's developmental, physical and emotional needs and welfare, thus

_____

[2] John J. Martin, II, Esquire, was appointed as both legal counsel and *guardian ad litem* for K.D. **See** Order, 5/20/25. The trial court determined that there was no conflict between the child's best interests and the child's legal interests. **Id.**

[3] Mother also appealed the termination of her parental rights. Her appeals are separately pending before this Court.

contravening sections 2511(a) and 2511(b) of the Adoption Act[.]

2. Whether the trial court erred as a matter of law in determining that the termination of parental rights of [Father] would serve the developmental, physical and emotional needs and welfare of the minor child.

3. Whether the trial court abused its discretion and committed an error of law when it found that the child's permanent placement goal of reunification was neither appropriate, nor feasible and ordered goal changes to adoption, thus contravening sections 6351(f) of the Juvenile Act . . . when the parent had exhibited compliance with the permanency plan having attended nearly all visits and participated in or completed nearly all recommended services that were available to him and the trial court failed to fully consider the bond between the parent and child.

Father's Brief, at 6 (unnecessary capitalization omitted).

Our standard of review in this context is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions

concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interest of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (internal citations omitted).

"We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *In re B.L.W.*, 843 A.2d 380, 383 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004) (citing *In re C.S.*, 761 A.2d 1197, 1199 (Pa. Super. 2000)).

Here, the trial court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. *Id.* at 384. We begin our analysis with Section 2511(a)(8), which states:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with the agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8). Stated another way, to satisfy Section 2511(a)(8), the petitioner must prove that: (1) the child has been removed from the parent's care for at least 12 months; (2) the conditions which led to the removal or placement still exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa. Super. 2018).

"Termination under subsection 2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that led to placement of his or her children." *Id.* Rather, the relevant inquiry is focused upon whether the at-issue conditions have been "remedied" such that "reunification of parent and child is imminent **at the time of the hearing**." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009) (emphasis added). Additionally, the Adoption Act prohibits the court from considering, as part of the §

2511(a)(8) analysis, any efforts by the parent to remedy the conditions that began after the filing of the termination petition. **M.E.**, 283 A.3d at 832.

Although Section 2511(a) generally focuses on the behavior of the parent, the third prong of Subsection 2511(a)(8) specifically "accounts for the needs of the child." **Id.** "This Court has recognized that application of § 2511(a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to the removal of her children." **Id.** (citing **In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa. Super. 2006)) (quotation marks and brackets omitted). However,

> by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. **The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future**. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit [eighteen] months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

**Id.** (emphasis added).

Father contends that CYS failed to prove by clear and convincing evidence that his conduct warranted termination under Subsection 2511(a)(8). Although he concedes that Child has been in placement for 12 months, he argues that the remaining two prongs were not met:

> [Father] would posit that he has resolved the major issues which led to the separation while making great strides toward removing the factors [which led to Child's placement]. As for the bond issue he has maintained that bond with [Child]. Over the past months

the priority of that relationship [has] become a motivating force for [Father] to toe the line.

\* \* \* \*

The court also failed to properly weigh the evidence of [Father's] progress toward alleviating the circumstances underlying the child's dependency.

Father's Brief, at 27-28.

The trial court found clear and convincing evidence that the conditions which led to K.B.'s removal continue to exist. The child was removed because (1) the police raided Mother and Father's home as part of a drug investigation; (2) Mother's admission to drug use and positive drug screens; (3) Mother and Father's lack of cooperation with CYS; (4) Father's incarceration; and (5) lack of stable housing.

Father was incarcerated for most of the dependency proceedings and was released from incarceration on February 23, 2025. *Id.* at 23. While incarcerated, Father completed a drug and alcohol program, as well as a parenting class. *Id.* at 41. Upon his release, Father successfully completed a 30-day in-patient rehabilitation program at Endless Mountain In-Patient Rehabilitation Center. *Id.* at 24. Father attended Pennsylvania Treatment and Health ("PATH") weekly in Honesdale and was compliant with drug screens. *Id.* He only tested positive for his prescription medication (buprenorphine). *Id.* As of June 16, 2025, Father obtained full-time employment with Sunoco gas station and provided his work schedule to his caseworker. *Id.* at 25.

At the time of the termination hearing, Father resided in a trailer park with Mother and a friend of theirs.[4] *Id.* Prior to Father's release, CYS informed Mother that for their current residence to be considered a home for K.B., the friend with whom they resided would have to be present for home visits, undergo a background check, complete drug screens, and they would need to purchase a bed for K.B. *Id.* at 20. None of those occurred because the friend was unwilling to cooperate with CYS. *Id.* Additionally, there were structural concerns with the home, and CYS was aware of frequent drug use within the home. *Id.* As a result, CYS had additional concerns with Father maintaining his sobriety while living there with Mother, who continued to test positive for substances. *Id.*

Moreover, CYS was concerned about K.B.'s safety if Father continued to live with Mother because there was prior abuse allegations made against Father.[5] *Id.* On more than one occasion, during a Zoom visit while Father was incarcerated, K.B. pleaded with Father not to hit Mother when he mentioned coming home from prison. *Id.* The last such statement was in November of 2024. *Id.*

_____

[4] Father did not ask CYS for housing assistance because of his prior eviction. N.T., 6/17/25, at 44.

[5] There was no further information on these past allegations in the certified record.

While we acknowledge that Father has taken steps to resolve the issues that led to K.B.'s placement, we are prohibited from considering any willingness or ability to remedy the conditions which led to placement. **See J.N.M.**, 177 A.3d at 943. Nor are we permitted to consider any efforts by the parent to remedy the conditions that began after the filing of the termination petition. **See M.E.**, 283 A.3d at 832. Father did not remedy the issues which led to Child's placement such that reunification of Father and K.B. was imminent at the time of the termination hearing. **See I.J.**, **supra**. Therefore, we find that the conditions which led to K.B.'s removal continue to exist. Father resided in a friend's home with Mother, who continued to test positive for substances, where other drug users were known to frequent, and would challenge his sobriety. The home was not safe for K.B. to return to. Accordingly, we find the second prong of subsection 2511(a)(8) is satisfied.

We next consider whether the record supports the court's conclusion that there was clear and convincing evidence to terminate Father's rights pursuant to the third prong of § 2511(a)(8) and § 2511(b). **See In re Adoption of G.W.**, 342 A.3d 68, 89 n.20 (Pa. Super. 2025) (*en banc*) (explaining that courts regularly conduct the needs and welfare analyses required by both the third prong of § 2511(a)(8) and § 2511(b) together using the same evidence).

Father argues that the court abused its discretion by determining that termination of his rights would best serve the developmental, physical, and

emotional needs and welfare of K.B. *See* Father's Brief, at 30. He contends that CYS "has shown that there is a healthy bond between [Father and K.B. and] the record is devoid of evidence of how terminating this child's link to his birth parents would benefit the child." *Id.* at 32.

Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b). "[T]he determination of the child's 'needs and welfare' requires consideration of the emotional bonds between the parent and child. The 'utmost attention' should be paid to discerning the effect on the child of permanently severing the parental bond." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citation omitted).

Our Supreme Court has explained, however, that "the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical and emotional needs and welfare." *Interest of K.T.*, 296 A.3d 1085, 1113 (Pa. 2023). The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care . . .; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's

developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." **Id.** (citations omitted). Importantly, "courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." **Id.**

With respect to its needs and welfare analysis in the instant case, the court explained:

> While Father has been more successful in maintaining his sobriety, Father has struggled to obtain employment and, as of the time of the termination hearing, was living with Mother in a residence where there is suspected drug use. There are past domestic violence allegations between Father and Mother. The minor child even ordered Father not to hit Mother during a Zoom visit. Such instability can only negatively impact the minor child's developmental needs, which are currently being met by the minor child's permanency resource, [W.J.] Additionally, Mother and Father have demonstrated an inability to meet the child's physical needs, as they continue to live in a residence which is unsafe for the minor and poses a threat to their own sobriety. The minor child's physical needs are met by residing with his placement resource.
>
> Termination of parental rights best serves the minor child's emotional needs and welfare. The minor child is cared for, loved, and supported by [W.J.], who also promises the minor child continued safety and security. The minor child and [W.J.] are bonded. The minor child is the only child in [W.J.]'s home. The minor child calls [W.J.] "Grandma." [W.J.] has expressed that, out of all the children she has cared for, [K.B.] is her favorite, and even her family loves [him]. [W.J.] has expressed a desire to serve as a permanent resource for the minor child.
>
> Mother and Father cannot offer the minor child this same degree of love, support, security, and safety. This is illustrated by the minor child's needs to express concerns that Father would potentially assault Mother. Mother's lack of concern in and responsibility toward becoming sober, and Father's lack of concern

- 12 -

in defending his sobriety against potential triggers also bode ill in their capacity for providing the minor child with emotional care and support the minor child needs.

While the court finds that there is a bond between [K.B.] and Mother and Father, the court finds that these bonds are not beneficial to the minor child. The bond between the minor child and [W.J.] is suited to meet the minor child's developmental, physical and emotional needs. Ultimately, the potential trauma caused by breaking these bonds is outweighed by the benefit of moving the minor child toward a permanent home.

Supplemental Trial Court Opinion, 1/21/26 at 2-3.

The record supports the court's determination. While incarcerated, Father attended 46 of 57 visits offered. N.T. Hearing, 6/17/25, at 10. Most of the visits he missed were due to technical or scheduling difficulties with the prison. Initially, Father did not contact CYS upon his release from in-patient rehabilitation to set up visits. Once the visits were scheduled, Father attended 12 of 15 visits. The ones he missed were due to illness or failure to respond to the agency. *Id.* at 10-11. Father was always attentive during the visits and communicated with K.B. about age-appropriate topics.

Although Father and K.B. have a bond, Father cannot provide K.B. with the safety and security that he deserves. Father refused to put Child's needs ahead of Mother's and his own needs by choosing to reside with Mother, while Mother showed minimal efforts to address her substance abuse and mental health issues. At the time of the termination hearing, Father was not independent enough to care for Child and reunification was not imminent. The court was unable to return Child to Father after terminating Mother's parental

rights because Father resided with Mother, and Mother conceded that the trailer was not safe for Child.

Prior to K.B.'s placement, he had not yet attended school despite being old enough to do so. After K.B. was placed in foster care, he attended kindergarten for a few months; thereafter, he was not promoted to first grade and it was recommended that he attend a full year of kindergarten to build a strong foundation with letters, sounds, numbers, etc. N.T. Permanency Review Hearing, 6/11/24, at 9. It was further recommended that K.B. be evaluated to see if he was eligible for an individualized education program (IEP). *Id.* There were also incidents where K.B. was physically aggressive toward other students and misbehaved on the school bus. N.T. Permanency Review Hearing, 12/17/24, at 8. Those behaviors subsided over time while K.B. was in placement. *Id.*

At the termination hearing, K.B.'s grades improved significantly and there were no longer any disciplinary concerns. N.T. Hearing, 6/17/25, at 12. His vocabulary grew exponentially, he can hold full conversations, and he verbalizes his feelings and needs. *Id.* at 7. K.B. was diagnosed with an intellectual disability. *Id.* at 12. Overall, K.B. is healthy and was prescribed Ensure to help him gain weight. *Id.* W.J. reported that K.B. eats and sleeps well and expanded his palette by trying different foods. *Id.* at 7.

Based on the record before us and the standard of review we must employ, we discern no abuse of discretion in the court's conclusion that K.B.

is bonded with his foster parent, his foster parent meets his needs and welfare, and that K.B. will not be irreparably harmed by terminating Father's parental rights. Accordingly, we conclude that the court did not err in determining K.B.'s developmental, emotional and physical needs and welfare are best met by terminating Father's parental rights under the third prong of subsections 2511(a)(8) and 2511(b).

As the court's determination pursuant to subsections 2511(a)(8) and 2511(b) is supported by the record, we must affirm the decree terminating Father's parental rights. **See M.E.**, **supra.**

We now turn to Father's separate challenge of the court's order changing K.B.'s permanency goal from reunification to adoption. Under Pennsylvania law, our decision above affirming the court's termination decree renders any challenge to the goal change order moot. **See In re Adoption of A.H.**, 247 A.3d 439, 446 (Pa. Super. 2021); **see also In re D.A.**, 801 A.2d 614, 616 (Pa. Super. 2002) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect."). Accordingly, we dismiss Father's goal change appeal as moot.

Decree affirmed. Appeal from goal change order dismissed as moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/13/2026